## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ERNEST AND MARY BROWN,

       Plaintiffs,

vs.                                                                          No. CIV-06-403 MV/RLP

THE COLEMAN COMPANY, INC.,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Summary

Judgment, filed July 23, 2007, **[Doc. No. 63]**.  The Court, having considered the motion, briefs,

relevant law and being otherwise fully informed, finds that the motion will be **GRANTED in**

**part** and **DENIED in part**.

### BACKGROUND

In November of 2005, Plaintiff Ernest Brown went camping in southern New Mexico

with his friend, Brandon Gaudelli.  They brought several Coleman Company products on the

camping trip, including a propane lantern, a propane catalytic heater, propane canisters, and a

tent.  On the third night of the camping trip, Gaudelli gave Plaintiff the catalytic heater to use

inside his tent to keep him warm during the night.  Attached to the heater was a partially used

propane canister.  Gaudelli also gave Plaintiff another propane canister to use when the partially

used propane canister attached to the heater ran out of fuel.  Unbeknownst to either one of them,

the second propane canister previously had been used on a Coleman lantern and when the

canister was detached from the lantern, the o-ring and retaining ring from the canister had

detached and remained on the lantern's fuel probe.[1]

Plaintiff used the catalytic heater twice in the night before the first propane canister ran

out of fuel.  Plaintiff detached the first canister from the heater and attached the second canister

with the missing o-ring assembly.  He used the heater with the second canister for approximately

fifteen minutes without incident.  Just before dawn, Plaintiff attempted to turn on the heater

again.  He did not smell propane or hear propane escaping, but when he pushed the ignition

button, the heater immediately burst into flames.  Plaintiff grabbed the burning heater and ran

out of the tent, suffering severe burns on his hand and face.

Plaintiff and his wife, Nancy Brown, subsequently filed this action against Coleman

Company alleging product liability claims for the Coleman heater, tent, and propane canister

under  theories of negligence, strict liability and breach of warranty.  Nancy Brown seeks

damages for loss of consortium.  Defendant now moves for summary judgment on the grounds

that Plaintiffs cannot establish essential elements of their claims upon which they bear the

burden of proof.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287,

1290 (10th Cir. 1999).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute

---

[1]  During the manufacturing process, an o-ring is mechanically inserted into the canister's main valve housing.  The o-ring is held inside the main valve housing by a retaining ring.  Both the o-ring and the retaining ring are press-fit into the cylinder.

between the parties will not defeat an otherwise properly supported motion for summary

judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine

issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.

1993).  There is no requirement that the moving party negate the nonmovant's claim.  *See*

*Celotex Corp. v. Catrett*,  477 U.S. 317, 325 (1986).  Once the moving party meets its burden,

the nonmoving party must show that genuine issues remain for trial "as to those dispositive

matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated*

*Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted).  Rather than "merely show

there is some metaphysical doubt as to the material facts," the nonmoving party is required to

"go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and

admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v.*

*Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173

(10th Cir. 1998).  There is no issue for trial unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable

to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn

from the evidence." *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

**A.  Product Liability Claims Regarding Tent and Heater**

As an initial matter, Plaintiffs have conceded their product liability claims regarding the tent and heater. *See* Plaintiffs' Response to Defendant's Motion for Summary Judgment and Brief in Opposition at p. 6 ("As an affirmative matter, Plaintiffs do not dispute that the subject tent and subject heater were free from defect, and are no longer a subject of the Plaintiffs' claims."). Plaintiffs also are not pursuing their warning claims regarding the propane canister. Consequently, the only remaining product liability claims are a design defect claim and a manufacturing defect claim regarding the propane canister.

**B.  Propane Canister Manufacturing Defect Claim**

Plaintiffs contend that the propane canister was defectively manufactured in that the internal diameter of the o-ring was smaller than specified. In *Stang v. Hertz Corp*., 83 N.M. 730, 497 P.2d 732 (1972), the Supreme Court of New Mexico formally adopted the principle of strict liability in cases involving product manufacturers. *See id.* at 735, 497 P.2d at 737. The court in *Stang* explained that "the doctrine of strict liability was evolved to place liability on the party primarily responsible for the injury occurring, that is, the manufacturer of the defective product." *Id*. at 734, 497 P.2d at 736 (quoting *Lechuga, Inc. v. Montgomery*, 467 P.2d 256, 261 (Ariz. Ct. App.1970) (Jacobson, J ., concurring)). In holding manufacturers strictly liable for injuries that defective products cause, New Mexico law is consistent with that of virtually every other American jurisdiction. *See Brooks v. Beech Aircraft Corp*., 120 N.M. 372, 375, 902 P.2d 54, 57 (1995) (noting "nearly every American jurisdiction has adopted some form of strict liability in tort as a measure of manufacturer responsibility for injuries caused by defective products").

To succeed in a cause of action brought under a theory of strict products liability, a plaintiff must satisfy the following five elements: (1) the product was defective; (2) the product

was defective when it left the hands of the defendant and was substantially unchanged when it

reached the user or consumer; (3) that because of the defect the product was unreasonably

dangerous to the user or consumer; (4) the consumer was injured or was damaged; and (5) the

defective condition of the product was the proximate cause of the injury or damage. *Tenney v.*

*Seven-Up Co.*, 92 N.M. 158, 159, 584 P.2d 205, 206 (Ct. App.1978). For Plaintiffs to survive

this motion for summary judgment, they must present evidence sufficient to establish a genuine

issue of fact with regard to each of these elements.

 The parties agree that the post-fire inspection revealed that the internal diameter of the o-

ring on the propane canister was smaller than its design specifications. Thus, there is no dispute

that the propane canister was defective and Plaintiffs can prove the first element of their claim.

Defendant argues, however, that Plaintiffs cannot meet the second element of a strict products

liability claim because there is no evidence to establish that the o-ring was in the same condition

when it dislodged on the lantern's fuel probe as it was when it left Defendant's possession. In

support of this argument, Defendant notes evidence showing that at the post-fire inspection the

retaining ring was cracked and the o-ring was abraded and that this damage occurred after the

canister left Coleman's possession. Plaintiffs' manufacturing defect claim, however, centers on

the internal diameter of the o-ring. There is no evidence that this measurement was affected by

the damage noted to the retaining ring and o-ring. In fact, Defendant's own expert stated that the

inside diameter of the subject o-ring was unlikely to change over time due to use and other

external conditions. Consequently, a jury could find that the propane canister contained a

manufacturing defect--an o-ring with a smaller than specified internal diameter--when it left the

hands of Defendant and that the internal diameter of the o-ring was substantially unchanged

when it reached the user or consumer.

Defendant does not contest the third and fourth elements of a of a strict products liability claim--that the alleged defect made the product unreasonably dangerous to Plaintiff or that Plaintiff was injured– but argues that the alleged defective condition of the product was not the proximate cause of Plaintiff's injuries.  Defendant asserts that there is no validation of Plaintiffs' expert's opinion that the increased frictional force from the small o-ring was sufficient to cause it to be dislodged from inside the cylinder by the lantern's fuel probe.  Plaintiffs' expert first explained the frictional forces between the o-ring and an appliance's valve probe:

> The frictional force between the o-ring and the appliance's valve probe increases as the o-ring diameter is reduced, since these parts are in direct contact.  When a cylinder is removed from an appliance, this frictional force acts directly upon the retaining ring.  If this friction force at the o-ring exceeds the retaining ring retention force, then the retaining ring and the o-ring will separate from the cylinder and remain on the valve probe.

Plaintiffs' expert then opined that the smaller diameter of the o-ring on the subject canister "certainly could have caused the retaining ring to separate from the assembly" and noted that it took a "surprising" amount of force to remove the o-ring assembly from the lantern's fuel probe.

Defendant asserts that this testimony is insufficient to demonstrate that the o-ring's frictional force was sufficient to cause it to dislodge on the appliance fuel probe because Plaintiffs' expert "merely sets forth general principles regarding frictional forces but does not demonstrate how they acted to create the situation presented in this case."  While Plaintiffs' expert did not measure the precise amount of force it took to remove the o-ring and its retaining ring, the fact that they were attached to the fuel probe of the lantern securely enough to require a "surprising" amount of force to remove is sufficient to create a genuine issue of fact regarding whether the smaller internal diameter of the o-ring may have caused it to become dislodged.  In

any case, the failure to specifically measure the force necessary goes to the weight to be given

the expert's testimony.  *See Martin v. Unit Rig & Equipment Co., Inc.*, 715 F.2d 1434, 1439-

1440 (D.N.M. 1983) ("We have held that where an expert witness testified that there was a

defect, but did not make metallurgical tests nor examine the vehicle in question, his testimony

should not be held incredible; such matters as the quality of the expert's investigation go to the

weight to be given the expert's testimony.")

        Finally, Defendant argues that even if the canister was defective, the alleged defect did

not cause the subject fire.  It making this argument, Defendant relies on the following undisputed

facts:

        1.      If a canister is snugly attached to the heater, it does not leak even without
                    the o-ring assembly.

        2.      If a canister is not snugly attached, there is an audible leak as well as an
                    odor.

        3.      Plaintiff neither heard a leak nor smelled propane prior to the heater
                    igniting.

        4.      After the fire, the canister, which was attached to the heater and lying on
                    the ground outside the tent where Plaintiff had dropped it, was not leaking
                    propane and still contained propane.

        5.      There is no evidence that the canister was tightened to the heater after the
                    fire.

        According to Defendant, these facts conclusively establish that the canister was not

leaking before the fire or after the fire and, therefore, could not have been the cause of the fire.

Plaintiffs, however, have an alternate interpretation of these facts.  Plaintiffs have come forward

with testimony that the heater had a constant propane smell, which would have masked any odor

from propane leaking from the canister.  In addition, Plaintiffs argue that the fact that the canister

was not leaking after the incident means that the canister was either tightened by Plaintiff

(intentionally or inadvertently) when he picked it up after it ignited or that when Plaintiff took

the burning heater out of the tent and dropped it, the orientation of the cylinder in relation to the

heater was altered and stopped the leak.  It is undisputed that without an o-ring, the canister

begins leaking when it is loosened from the heater approximately 3/8ths of an inch from snug

and that it continues leaking until it is completely disconnected from the heater.  It is also

undisputed that at the time the canister and heater were inspected after the fire, the canister was

3/16ths of an inch from being tight.  Thus, the difference between the canister leaking and not

leaking was an adjustment of the canister a mere 3/16ths of an inch–an adjustment small enough

to make Plaintiffs' theory plausible.  Consequently, the Court finds that the circumstantial

evidence presented by Plaintiffs is sufficient to support Plaintiffs' claim that the fire was caused

by the missing o-ring permitting propane gas to escape from the canister.  *See Martin v. Unit Rig*

*& Equip. Co.*, 715 F.2d 1434, 1439 (10th Cir. 1983) (under New Mexico law "causation may be

established by circumstantial evidence.").

Viewing the facts in the light most favorable to Plaintiffs and allowing Plaintiffs the

benefit of all reasonable inferences, the Court finds that the evidence presented is sufficient to

raise questions of material fact for the jury concerning whether the propane canister contained a

manufacturing defect when it left the hands of Defendant, whether the propane canister was

substantially unchanged when it reached the user or consumer, and whether the alleged defective

condition of the canister was the proximate cause of Plaintiffs' injury or damage.  Consequently,

summary judgment on this claim is not appropriate.

**C.  Propane Canister Design Defect Claim**

In their Complaint, Plaintiffs assert that the canister was defectively designed.  Defendant

seeks summary judgment on this claim on the grounds that there is no evidence that a defect

existed in the design of the propane canister.  Plaintiffs have come forward with no affirmative

evidence of a defect in the design of the propane canister.  Rather, Plaintiffs contend that if

Defendant argues that the o-ring was manufactured properly within Coleman design

specifications but then somehow shrank after manufacture then Plaintiffs would assert that this

shrinkage is a design defect.  Any argument that the o-ring shrank after manufacture has been

precluded by Defendant's expert, who has opined that the internal diameter of the o-ring is

unlikely to change over time due to use and other external conditions.  Consequently, the Court

will grant summary judgment to Defendant on Plaintiffs' design defect claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment,

filed July 23, 2007, **[Doc. No. 63]**, is **GRANTED in part** and **DENIED in part**.  Summary

judgment is granted to Defendant on all of Plaintiffs' product liability claims except the claim

that the propane canister was defectively manufactured.  In all other regards, the motion is

denied.

Dated this 31st day of August, 2007.

MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE